UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

Case No. 10-27532-BKC-LMI

In re

Chapter 11

First Foliage, L.C.,

      Debtor.

_____/

First Foliage, L.C.,                                   )    Adv.  Pro. No.
                                                       )
      Plaintiff,                               )
                                                       )
v.                                                     )
                                                       )
RURAL COMMUNITY INSURANCE                              )
SERVICES, a Foreign Corporation,                       )
INSURANCE FOR AGRICULTURE, LLC, a                      )
Florida Company, FIREMAN'S FUND                        )
INSURANCE COMPANY.                                     )
                                                       )
      Defendants.                              )
_____/

**PLAINTIFF FIRST FOLIAGE, L.C.'S: (A) VERIFIED
COMPLAINT FOR DECLARATORY RELIEF, DAMAGES
<u>AND OTHER RELIEF; AND (B) OBJECTION TO CLAIM</u>**

Plaintiff/Debtor First Foliage, L.C. ("**First Foliage**"), sues Rural Community Insurance

Services ("**RCIS**"), Insurance for Agriculture, LLC (**"Insurance for Agriculture"**), Fireman's

Fund Insurance Company (**"Fireman's Fund"**), and alleges as follows:

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

1

## Preliminary Statement

1.      First Foliage is the victim of an insurance bureaucracy that has lost all common sense and run amok.  A bureaucracy that holds all the cards and thinks nothing of exercising the "nuclear option" of putting a company out of business to extort payment of its illegitimate claims.

2.      This dumbfounding tale starts in 2009, when RCIS--quite out of nowhere--demanded that First Foliage return $2.8 million in benefits that RCIS legitimately paid to First Foliage in 2005 for crop damages suffered by First Foliage due to Hurricane Katrina and in 2006 crop damages suffered due to Hurricane Wilma.  The sole reason alleged by RCIS for this sudden and staggering claim was that First Foliage allegedly failed to list two of its shareholders on its 2005 insurance application.  Those shareholders own less than 34% of the company and are in no way barred from obtaining crop insurance.  It is this insignificant alleged omission of the names that is the basis for the RCIS $2.8 million claim.

3.      First Foliage immediately raised numerous legitimate defenses and requested that the claim be dropped.  Additionally, in January, 2010, First Foliage amended its insurance application to list the two shareholders omitted from its 2005 application and corrected the deficiencies RCIS alleged were present in the 2005 application.  But RCIS rejected all of First Foliage's defenses out of hand.  The RCIS exercised the "nuclear option" to obtain payment – placing First Foliage on the "Ineligible Tracking Service" ("ITS") list – effectively an insurance blacklist that bars First Foliage from getting any Multiple Peril Crop Insurance ("MPCI") at all through the Federal Crop Insurance program, the only program in the country that offers MPCI policies.  Thus, RCIS effectively stripped First Foliage of any ability to obtain an MPCI policy

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

2

for its $20 million foliage inventory.

4.    It was that blacklist that created First Foliage's urgent need to file its Chapter 11 proceeding and demand removal from the ITS.  And, in fact, the filing did trigger First Foliage's immediate removal from the ITS.  But RCIS' claim for $2.8 million remains.

5.    First Foliage believes that, for the reasons stated herein, it is not liable to RCIS for any repayment of benefits, that its placement on the ITS was unlawful and that it should never have been deemed ineligible for insurance.  RCIS' claim should be barred and, instead, First Foliage should be awarded judgment for damages caused by the Defendants' negligence.

## JURISDICTION AND VENUE

6.    This is a civil proceeding  and claim objection that arises under, arises in and relates to the First Foliage's Chapter 11 bankruptcy case under the Bankruptcy Code.

7.    This is a core proceeding within the meaning of 28 U.S.C. §§ 157 and 1334(b).

8.    Venue of this proceeding is proper in this judicial district under 28 U.S.C. § 1409.

## THE PARTIES

9.    Plaintiff/Debtor, First Foliage, L.C., ("First Foliage") is a corporation organized under the laws of Florida, with its place of business at 17800 SW 268th Street, Homestead, Florida 33031, within this judicial district and division.  It is a chapter 11 debtor in possession before this court.

10.    Defendant Rural Community Insurance Services ("RICS") is a foreign corporation organized under the laws of Minnesota, with offices located in Minnesota, California, Kansas, North Dakota and North Carolina.  At all times material to this action, RCIS acted as the Managing General Agent (MGA) on behalf of Fireman's Fund Insurance Company

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

3

with respect to the insurance policies that are the subject of this action.

11.     Defendant Insurance for Agriculture, LLC, ("Insurance for Agriculture") is a Florida limited liability company, whose address is 10691 N. Kendall Drive, Suite 102, Miami, Florida 33176.   At all times material to this action, Insurance for Agriculture acted as an insurance agent for RCIS and Fireman's Fund Insurance Company.

12.     Defendant Fireman's Fund Insurance Company ("Fireman's Fund"), is a foreign corporation organized under the laws of California, with offices located in California.   At all times material to this action, Fireman's Fund was an Approved Insurance Provider (AIP) for Multiple Peril Crop Insurance (MPCI) policies issued to crop growers (called "producers") pursuant to the Federal Crop Insurance Act (7 USC §1501 *et seq.*) and the rules and regulations promulgated thereunder.   Fireman's Fund was acting as an AIP through RCIS as its MGA. Consequently, unless otherwise stated in the following allegations, all allegations against RCIS contained in this Complaint are also directed against Fireman's Fund because RCIS was acting for and on behalf of Fireman's Fund.

## FACTUAL ALLEGATONS

13.     First Foliage initiated this bankruptcy case by filing its voluntary petition for relief under Chapter 11 of title 11 of the United States Code on June 23, 2010 (the "Petition") (D.E. 1).

14.     First Foliage remains a debtor in possession, no request having been made for the appointment of a trustee or examiner.   An official committee of unsecured creditors has been appointed in the case.

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

4

15.    **About First Foliage.**  First Foliage is a leading national supplier and marketer of indoor and outdoor tropical plants to big-box retailers, including Lowe's, Walmart, and Home Depot.  Based in Homestead, First Foliage is among the 10 largest tropical foliage nurseries in the nation and one of the three largest tropical foliage nurseries in Florida, as measured by sales dollars and growing square footage.  First Foliage is a Hispanic owned, family run business that has been growing and selling plants in Homestead, Florida since 2000.  First Foliage produces and markets approximately 250 varieties of ornamental, container-grown plants, including hibiscus, foliage, mandevilla, palms, ferns and various blooming plants.  First Foliage grows about 80% and purchases about 20% of the plants that it sells.  The plants are grown on about 446 acres of land, of which 312 acres are leased and 134 acres are owned.

16.    The company is run by Jose Garces and his wife Beatriz Garces, who together own 60% of the company's shares.   Beatriz Garces' brother, Calixto Garcia-Velez, Region Executive at First Bank Florida, owns 16% of the company.  Her cousin, Sixto Campano, the Chief Executive Officer of EFG International Miami, owns 18%.   Alberto Estrada (Sixto's godfather), owns 6% of the company and works on the farm.   Neither Calixto Garcia-Velez nor Sixto Campano are involved in the day-to-day business operations of the firm at this time, but Sixto Campano served as First Foliage's acting CFO during the early years of the business.

17.    First Foliage's business is seasonal, with approximately 65% of annual sales occurring during the months of March, April, and May.  First Foliage employs a core base of approximately 300 employees, with about 100 employees added during the peak selling season. First Foliage's plant inventory is produced by propagating young plants using cuttings from mature plants.  These cuttings are cultivated into viable liners and then transplanted into pots of

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

5

various sizes, depending on the plant.  The plants are then placed in the nursery to grow to specified sizes and levels of maturity, during which time they are typically stepped-up one to four times into larger pots.  The growing process typically takes six to nine months, and sometimes longer, depending on the type of plant.  Likewise, the plants are sold at different price points, depending on the plant and the pot size.

18.    **The Federal Crop Insurance Program.** The MPCI policies that are the subject of this Complaint were issued to First Foliage pursuant to the provisions of the Federal Crop Insurance Act (7 USC §1501 *et seq.*) and the rules and regulations promulgated thereunder. Under these provisions, the MPCI policies are issued by an AIP and such policies are reinsured, in substantial part, by the Federal Crop Insurance Corporation ("FCIC").  The operations of FCIC are managed by the Risk Management Agency ("RMA"), an agency of the United States Department of Agriculture.  RMA is responsible for setting the policy terms and establishing all underwriting and claims procedures, all of which must be followed by the AIP.  In addition, RMA sets the terms of the reinsurance agreements between FCIC and the AIP (called the Standard Reinsurance Agreement), which reinsurance agreement includes the payments of certain costs and expenses to the AIP.  According to the United States Department of Agriculture-Risk Management Agency ("**RMA**"), the RMA's role in the USDA is to help producers manage their business risks through effective, market-based risk management solutions.  RMA's mission is to promote, support, and regulate sound risk management solutions to preserve and strengthen the economic stability of America's agricultural producers. As part of this mission, RMA operates and manages the Federal Crop Insurance Corporation (FCIC).  *See* The United States Department of Agriculture, "A Risk Management Agency Fact Sheet: About

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

6

the Risk Management Agency," revised October 2009, *http://www.rma.usda.gov/pubs/rme/aboutrma.pdf.*

19.    The FCIC likewise claims to promote the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance.  The FCIC is the only source of MPCI coverage in the country.

20.    MPCI insurance policies are continuous.  That is, before a crop year policy expires, insureds like First Foliage apply for new coverage, which is effective upon the expiration of the then current policy.

21.    MPCI policies consist of at least three parts.  The first part is called the Basic Provisions, which apply to all crops in all locations.  The second part is called the Crop Provisions, which apply to the particular crops being insured.  The third part is called the Special Provisions, which apply to the particular location where the crop is being insured.  The Basic Provisions provide that if conflicts exist among the various policy provisions, the order of priority is first, the Special Provisions, then the Crop Provisions, and finally the Basic Provisions.

22.    Crop Year designations are based upon the year that the policy expires.  The expiration date for the 2005 Crop Year was September 30, 2005.  The policy changed for the 2006 Crop Year.  Thus, the 2006 Crop Year was from October 1, 2005 to May 31 of 2006.

23.    The Basic Provisions for the 2005 Crop Year are set forth in Form 04-BR.  The Basic Provisions for Crop Year 2006 and subsequent years are contained in Form 05-BR.  The Nursery Crop Provisions for Crop Year 2005 are contained in Form 99-073, and the Nursery

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

7

Crop Provisions for Crop Year 2006 are contained in Form 06-073. Neither the Nursery Crop Provisions nor the Special Provisions that are part of the policies issued to First Foliage are relevant to this action, and consequently only Form 04-BR is attached hereto as **Exhibit A** and Form 05-BR is attached hereto as **Exhibit B**.

24.     From its inception in 2000 through Crop Year 2010 First Foliage was insured by Fireman's Fund through RCIS, one of the few providers of crop insurance in South Florida. Since 2000, RCIS, through its agent, Insurance for Agriculture and its employees, Joseph Cummings and Richard Cummings, advised First Foliage on crop insurance matters.

25.     In fact, Joseph Cummings of Insurance for Agriculture was the individual who completed First Foliage's initial insurance application for MPCI coverage for Crop Year 2000. Since then, First Foliage has relied on the advice and representations of Insurance for Agriculture and Richard Cummings and Joseph Cummings, and they have always had access to all the information requested from First Foliage for the insurance application process.

26.     From its inception in 2000, First Foliage has relied on RCIS' course of conduct, including its claim handling practices. Specifically, the crop insurance policies issued by RCIS to First Foliage were automatically renewed for the 2001 through the 2005 crop years.

27.     In addition, before First Foliage's claims for losses incurred in the Crop Years 2005 and 2006 due to Hurricanes Katrina and Wilma, RCIS paid multiple claims to First Foliage without any questioning from RCIS regarding any individuals or entities who might own a Substantial Beneficial Interest ("SBI") in First Foliage. SBI is a term defined by the FCIC's INELIGIBLE TRACKING SYSTEM HANDBOOK FOR THE 2008 AND SUCCEEDING CROP YEARS as: "an interest held by any person of at least 10 percent in the applicant or the insured." *See* U.S. INELIGIBLE

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

8

TRACKING SYSTEM HANDBOOK FOR THE 2008 AND SUCCEEDING CROP YEARS, FCIC 24050, § 3 (2008).

28.    In Crop Year 2005, First Foliage's nursery farm incurred a substantial crop loss due to Hurricane Katrina.  As a result, First Foliage made a claim to RCIS under its 2005 MPCI policy and, on September 26, 2005, received a payment (called an "indemnity") of $7,617,591.00 (before premium credits) to compensate for the losses incurred as a result of Hurricane Katrina.  Subsequently, in Crop Year 2006, First Foliage's nursery farm incurred additional crop losses due to Hurricane Wilma.  As a result, First Foliage made a claim to RCIS under its 2006 MPCI policy and, on May 31, 2006, received an indemnity of $2,381,171 (before premium credits) to compensate for the losses incurred as a result of Hurricane Wilma ("**Hurricane Loss Payments**").  The Hurricane Loss Payments were used to pay its line of credit in the ordinary course.  The insurance proceeds in the Hurricane Loss Payments were not distributed to First Foliage's owners.

29.    **RCIS's Reimbursement Claim.**  On December 3, 2009, *several years* after First Foliage received and properly applied the Hurricane Loss Payments, RCIS sent a letter to First Foliage notifying First Foliage for the first time that RCIS was seeking reimbursement in the amount of $2,849,973.00 of the Hurricane Loss Payments solely for the following reason: "[F]or the crop year 2005 . . . not all Substantial Beneficial Interests ("SBI") were listed on the policy."

30.    Specifically, RCIS claimed that Sixto Campano, who owned 18% of First Foliage, and Calixto Garcia-Velez, who owned 16%, were not listed on the policy application for the crop year 2005.  RCIS claimed that, pursuant to the Common Crop Insurance Policy 05-BR, section 2.(2)(i), the "[t]he impact of the policy not reflecting all applicable SBI information [was that] the insurable interest [had to be] reduced by the [ownership] shares/interests not [listed on the

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

9

policy]."

31.    In order to satisfy this requirement, RCIS informed First Foliage that it had to revise the coverage on its 2005 MPCI  policy (plus all subsequent Crop  Years, including the 2006 Crop Year) to reduce First Foliage's insurable interest/coverage by the percentage interests of the two individuals not listed on the application, Sixto Campano and Calixto Garcia-Velez, who collectively owned 34% of First Foliage.   RCIS therefore calculated the amount of reimbursement sought of $2,849,973.00 by reducing the Hurricane Loss Payments by 34% and then crediting 34% of the premiums paid by First Foliage since 2005.   A true and correct copy of the initial Letter from RCIS to First Foliage demanding repayment, dated December 3, 2009, and RCIS' subsequent letter, dated June 1, 2010, are attached hereto as **Composite Exhibit C**.

32.    **<u>First Foliage's Reliance Upon Its Agent.</u>**   The SBI policy provision alleged by RCIS to have been violated by First Foliage is technical in nature, and First Foliage reasonably relied, and has always relied, on RCIS' and Insurance for Agriculture's specialized knowledge, guidance and advice.   The original policy application submitted in 2000 disclosed only Jose and Beatriz Garces as owners of First Foliage.  The failure to list First Foliage's other owners was due to RCIS and its agent, Insurance for Agriculture and Joseph Cummings, because the application was completed by Joseph Cummings of Insurance for Agriculture, who acted on behalf of RCIS and was supposed to be an expert in these matters.

33.    But Insurance for Agriculture and Joseph Cummings failed: (a) to advise First Foliage regarding the issue of First Foliage's SBI information, and (b) to engage in any type of inquiry or conversation to elicit this information from First Foliage.   Rather, Insurance for Agriculture and Joseph Cummings simply gave Jose and Beatriz Garces the completed insurance

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

10

application, and they signed and returned it.

34.    Jose and Beatriz Garces run nurseries and, because they are not experienced in insurance law, applications or policies, they relied on Insurance for Agriculture and Joseph Cummings' guidance and expertise, they believed that all the information required by RCIS to properly and fully insure First Foliage had been asked for by Insurance for Agriculture and Joseph Cummings and provided by First Foliage.

35.    In fact, at no time prior to December 3, 2009, did RCIS or its agent, Insurance for Agriculture and Joseph Cummings, ever provide any advice to First Foliage regarding the issue of First Foliage's SBI information or ask First Foliage for this information.  Had RCIS ever requested the SBI information, First Foliage would have immediately provided it.  In fact, when asked by the auditor for RMA, First Foliage immediately and freely provided the ownership information to the auditor. See Paragraph 38, below.  Further, had RCIS conducted a minimal inquiry of First Foliage prior to the payment of any of its claims, the SBI issue would have been discovered and corrected well before the 2005 Crop Year.

36.    Only in 2009, many years after First Foliage applied for and obtained crop insurance, and years after RCIS first paid claims to First Foliage, did the subject first arise that First Foliage did not list all owners on its 2005 application.  Therefore, to the extent that First Foliage's insurance policy for the crop year 2005 was issued on the basis of incomplete information, this was a direct result of the actions and omissions of RCIS and its agents going as far back as the year 2000 because had the SBI information been requested by RCIS prior to 2009, it would have been provided by First Foliage.

37.    Upon learning that all owners were not listed on its prior applications, by letter

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

11

dated January 11, 2009, First Foliage revised its prior applications to reflect all the owners.  A true and correct copy of the letter is attached as **Exhibit D**.

38.    **RMA Findings as to RCIS's Negligence.**  As stated in its October 2009 report, the RMA determined that RCIS violated numerous provisions of the Standard Reinsurance Agreement and the attendant Crop Insurance Handbook in dealing with First Foliage.  A true and correct copy of RCIS' Report Letter, dated October 2009, is attached hereto as **Exhibit E**.

39.    Specifically, with regard to First Foliage, the RMA found that RCIS had a duty, but *failed* "to verify that the Substantial Business Interest (SBI) information listed on the application for the insurance or acreage report for CY [Crop Year] 2005 was accurate." *See Report* at p. 2.  The RMA found that:

> For crop year 2004 and succeeding crop years, FCIC required that Insurance Providers obtain a SBI certification statement on the application for new applicants and on the acreage report for carryover policies … A review of the CY 2005 policy file for First Foliage failed to locate the required SBIO certification statement.

See Report at 2.

40.    Further, the RMA found that RCIS "did not require the insured to initial a SBI Certification Statement for CY 2005."

41.    Thus, had RCIS requested the SBI information from First Foliage and acted as required, it would have timely obtained First Foliage's SBI information.  Moreover, the RMA Report finds that Calixto Garcia and Sixto Campano are eligible for insurance coverage, such that disclosure of the ownership interest would not have prevented the crop insurance from being issued.

42.    Accordingly, RCIS, both institutionally and through its agent, Insurance for

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

12

Agriculture and Joseph Cummings, is responsible for First Foliage's failure to list all SBI information on its 2005 insurance application, and, as such, RCIS has never been entitled to any reimbursement of the Hurricane Loss Payments.

43. **RCIS's Findings Regarding First Foliage's Compliance with Nursery Crop Provisions and Loss Adjustment Standards Handbook**. In RCIS's Claim Review Report dated September 21, 2005, Darla Barrett, who authored the report, stated as follows: "Policy and procedures as specified in the Nursery Crop Provisions and Nursery [Loss Adjustment Standards Handbook] LASH were followed".

44. Accordingly, RCIS's own finding that First Foliage followed the Nursery Crop Provisions and Nursery Loss Adjustment Standards Handbook should preclude RCIS from asserting that First Foliage was responsible for any failure to comply with the Nursery Crop Provisions.

45. **RCIS Denial of Due Process to First Foliage**. After requesting a reimbursement from First Foliage, RCIS *failed* to provide First Foliage with the due process to which it was entitled pursuant to RCIS' own December 3, 2009 letter, which stated that First Foliage could pursue an appeal with RCIS. See **Composite Exhibit C** at 2.

46. Once again, relying on RCIS' representations, on December 31, 2009, First Foliage filed a notice of appeal to RCIS of its determinations expressed in its December 3, 2009 letter. A true and correct copy of First Foliage's notice of appeal letter to the Rural Community Insurance Services, dated December 31, 2009, is attached hereto as **Exhibit F**.

47. But RCIS failed to provide First Foliage with any appellate procedures. Rather, counsel for RCIS casually informed First Foliage via email that RCIS had considered First

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

13

Foliage's notice of appeal to be its actual appeal, and that First Foliage should pursue mediation or arbitration as it deemed appropriate. A true and correct copy of RCIS' counsel's email, dated February 5, 2010, is attached hereto as **Exhibit G**.

48.     **RCIS Blacklists First Foliage.**   Fireman's Fund is an Approved Insurance Provider (AIP) that provides crop insurance programs that are insured or reinsured by the Federal Crop Insurance Corporation (FCIC) administered under the Federal Crop Insurance Act (Act). 7 U.S.C. §1501, *et seq.*

49.     The RMA maintains an "Ineligible Tracking System" (ITS) database, which identifies persons or entities who are not eligible to participate in any crop insurance program insured by the FCIC. Federal crop insurance is not available to persons or entities listed on the ITS database until their eligibility is reinstated in accordance with applicable policy provisions and regulations. U.S. INELIGIBLE TRACKING SYSTEM HANDBOOK FOR THE 2008 AND SUCCEEDING CROP YEARS, FCIC 24050, § 1 (2008). The RMA maintains the ITS database in order to aid Approved Insurance Providers (AIPs) in identifying entities or persons ineligible for crop insurance. The purpose of the ITS database is to collect and maintain records submitted to it primarily by AIPs and identify persons or entities who are not eligible to participate in any crop insurance programs insured or reinsured by the Federal Crop Insurance Corporation (FCIC) administered under the Federal Crop Insurance Act (Act). U.S. INELIGIBLE TRACKING SYSTEM HANDBOOK FOR THE 2008 AND SUCCEEDING CROP YEARS, FCIC 24050, § 1 (2008).

50.     Via a letter dated February 8th, RCIS' counsel further informed First Foliage that the reimbursement or debt owed to RCIS by First Foliage could lead to First Foliage's "potential inclusion" on the ITS, but stated that RCIS ***would not, "for the present, submit First Foliage's***

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

14

*name and tax identification number for inclusion on the ITS.  If RCIS reconsiders its position, I will notify you accordingly, and RCIS will provide First Foliage with the due process required by RMA procedures."*  A true and correct copy of the letter from RCIS' counsel to First Foliage, dated February 8, 2010, is attached hereto as **Exhibit H** (emphasis added).

51.    In reliance of the representation made by RCIS' counsel that it would not submit First Foliage's name for placement on the ITS database, First Foliage decided to forgo an immediate legal action to enjoin RCIS from placing First Foliage on the ITS database and submitted several requests for final agency determination ("FAD") to the FCIC.  Requests for FADs constitute the method by which AIPs or insureds can seek interpretations of the MPCI policy language.

52.    On May 18 and 19, 2010, First Foliage sought various policy interpretations from RMA which, if agreed to by RMA, would result in First Foliage not having to repay any indemnity to RCIS.

53.    Specifically, First Foliage sought the following interpretations:

a.    That the insured may supplement their applications at any time to include any omitted SBI information.  A true and correct copy of this FAD Request is attached as **Exhibit I** and are by reference made a part hereof.

b.    That the AIP has one year from the date of payment of a loss in order to resolve any disagreement respecting the insurer's demand for repayment. A true and correct copy of this FAD Request is attached as **Exhibit J** and is by reference made a part hereof.

c.    That the AIP has no authority to demand repayment of indemnity from an

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

15

insured, where the application omitted SBI information of persons that were not on the ITS system list.  A true and correct copy of this FAD Request is attached as **Exhibit K** and is by reference made a part hereof.

54.     RMA refused to render any policy interpretations requested by First Foliage because it took the position that it only had the authority to interpret policies in effect for the current crop year (2010) and the three prior crop years.  Thus it could not make any policy interpretations for the 2005 and 2006 Crop Year policies.  A true and correct copy of RMA's Letters dated June 10, 2010 denying First Foliage's FAD requests are attached hereto as **Composite Exhibit L.**

55.     In fact, RCIS completely misrepresented its intentions not to submit First Foliage to RMA for inclusion on the ITS database.  Without providing any advanced notice whatsoever, RCIS submitted First Foliage's name to the RMA for placement on the ITS database on February 25, 2010 – barely two weeks after it represented it would not do so.

56.     Worse, First Foliage first learned of its placement on the ITS database via a letter from RMA dated May 31, 2010 – ***nearly 60 days later*** – informing First Foliage that, due to its failure to pay its debt to RCIS by February 25, 2010, RCIS had submitted its name for placement on the ITS, rendering First Foliage ineligible to participate in any crop insurance program insured by the FCIC.  A true and correct copy of the letter from the RMA to First Foliage, dated May 31, 2010, is attached hereto as **Exhibit M**.

57.     **RCIS's Multi-Year Delay in Asserting the SBI Issue Prejudiced First Foliage.**
RCIS' multi-year delay in raising the lack of SBI information issue as grounds for seeking reimbursement of a portion of the Hurricane Loss Payments effectively bars an FCIC

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

16

interpretation of the pertinent policy provisions for the 2005 and 2006 Crop Year because the limitations period established by 7 C.F.R. § 400.765(b) has expired.

58.    That is, 7 C.F.R. § 400.765(b) provides the following limitations period for obtaining an FCIC interpretation of a policy provision: "Requesters may seek interpretations of those provisions of the Act and the regulations promulgated thereunder that are in effect for *the crop year in which the request under this subpart is being made and the three previous crop years.*") (emphasis added).

59.    First Foliage maintains that the omission of the SBI information on the insurance application, was caused by the actions and failures of RCIS, both institutionally and through its agent, Insurance for Agriculture and Joseph Cummings (the purported experts), and the inadvertent and unintentional acts of First Foliage (the non-expert).    Further, First Foliage contends that the SBI omission may be cured under the terms of the applicable policy by later supplement.

60.    As required, First Foliage submitted its FAD requests and sought a policy interpretation from the FCIC.

61.    The FCIC rejected each of First Foliage's FADs as untimely.    The RMA regulations only allow it to issue FAD determinations for the present and the prior crop three years – 2010, 2009, 2008, and 2007.    Because First Foliage's FAD issues arose in 2005, the FAD could not address them.

62.    Section 20 of Form 05-BR, which RCIS claims is the applicable policy here, provides that arbitration is mandatory but that any issue relating to the interpretation of the underlying policy MUST be determined by the FCIC through a FAD request.    Because RCIS's

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

17

failure to raise the SBI issue on a timely basis prevents First Foliage from obtaining FADs that would vindicate First Foliage's position, First Foliage is essentially left without a remedy

63.    **The Reinsured Crop Insurance Policies for the 2005 and 2006 Crop Years Impose a One-Year Limitations Period for Bringing Claims That Should Apply to RCIS Equally as it Applies to First Foliage**.  The MPCI Policy for the 2006 Crop Years (Form 05-BR) provides in section 20:

> (a)  If you and we fail to agree on any determination made by us except those specified in section 20(d), the disagreement may be resolved through mediation in accordance with section 20(g).  If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose . . .

> (b)  Regardless of whether mediation is elected:

> (1)  *The initiation of arbitration proceedings must occur within* <u>*one*</u> <u>*year*</u> *of the date we denied your claim or rendered the determination with which you disagree, whichever is later . . .*

See **Exhibit B.**  The MPCI Policy for the 2005 Crop Year (Form 04-BR) has a similar limitation. Section 20 provides that factual disputes must be arbitrated.  Section 25 reads as follows:

> **25. Legal Action Against Us.**
> (a)    You may not bring legal action against us unless you have complied with all of the policy provisions.
> (b)    If you do take legal action against us, *you must do so within 12 months of the date of denial of the claim* . . .

See **Exhibit A.**

64.    According to these policy provisions, a disagreement between RCIS and the insured respecting the denial of a claim or demand for repayment must be resolved (in the absence of mediation) via arbitration or legal proceedings initiated within one year of the

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

18

insurer's payment of the loss.  The policies do not provide any explicit limitations period for an insurer to demand repayment from an insured. Nevertheless, it is clear that if an insurer denies a claim in any respect, the insured only has one year after such denial to initiate arbitration or litigation.

65.    For these policies to be anything other than an invalid illusory contracts, this one-year limitation must also apply to an insurer, such as Firemen's Fund, that seeks to dispute its own initial determination that the insured complied with all the policy provisions such as to be entitled to the payment of a loss.  In other words, the one-year limitation within which to dispute an insurer's initial claim determination must be reciprocal and equally applicable to RCIS and First Foliage.  Otherwise, insurers would have an infinite amount of time to reverse their own initial determinations and seek repayment. This would constitute an inequitable construction of the policies, which longstanding principles of contractual interpretation preclude.

66.    **Hudson Processing of the 2011 Application.**  On May 3, 2010, First Foliage submitted a crop insurance application with a signature date of April 30, 2010 to Hudson Insurance.  As noted above, First Foliage then later learned that it was on the ITS list.

67.    Hudson did not issue the insurance application, nor did it confirm that it would not do so.  The April 30, 2010 application was pending at the time of First Foliage's bankruptcy filing on June 23, 2010 for Chapter 11 protection.

68.    As a result of filing the Petition, First Foliage was removed from the ITS by RCIS as of June 23, 2010 and its eligibility for crop insurance was reinstated as provided by the ITS Handbook and the provisions of 11 U.S.C. 362.

69.    Insurance was finally bound by Hudson Insurance on August 3, 2010.

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

19

## COUNT I
## REQUEST FOR DECLARATORY JUDGEMENT
### (as to Defendants RCIS, Insurance for Agriculture, and Fireman's Fund)

70.     First Foliage expressly incorporates herein by reference the allegations set forth in paragraphs 1 through 69 of this Complaint as though fully set forth herein.

71.     This is an action for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

72.     A substantial and continuing case and controversy exists among the parties, each having adverse legal interests.

73.     The continuing case and controversy is real and immediate, creating a definite threat of injury to Plaintiff/Debtor, absent a declaration of the parties' rights.

74.     First Foliage maintains that the omission of the SBI information on the insurance application, was caused by the actions and failures of RCIS, both institutionally and through its agent, Insurance for Agriculture and Joseph Cummings (the purported experts), and the inadvertent and unintentional acts of First Foliage (the non-expert).

75.     First Foliage contends that the SBI omission may be cured under the terms of the applicable policy by later supplement.

76.     Additionally, First Foliage contends that the claim of RCIS for reimbursement is not authorized by the applicable policies and that the claim of RCIS for reimbursement is barred by the implied one year limitation period.

77.     The defenses of First Foliage are set forth in the FAD Requests that are attached hereto.

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

20

78.     The contentions of First Foliage require an interpretation of the applicable policies, which, according to Section 20 of Form 05-BR, , can only be raised and determined by the FCIC through requests for FADs, or Final Agency Determinations.  As required, First Foliage submitted its FAD requests and sought the appropriate policy interpretations from the FCIC.

79.     The RMA, on behalf of the FCIC, rejected *each* of First Foliage's FADs as untimely.  The RMA regulations only allow it to issue FAD determinations for the present and the prior crop three years – 2010, 2009, 2008, and 2007.  Because First Foliage's FAD issues arose in 2005, the FAD could not address them.

80.     RCIS's failure to raise the SBI issue on a timely basis thus prevents First Foliage from obtaining FADs that would vindicate First Foliage's position and are required under the terms of the policy.

81.     Therefore, RCIS claims to recover benefits paid based on a policy or occurrence outside the FAD three-year look back period should be barred and estopped.

82.     By contrast, RCIS asserts that it may still pursue First Foliage for the alleged debt owed to it.

83.     Because RCIS is responsible for the failure to list all of First Foliage's SBI information on its insurance application, and because of the terms of applicable policies prevent RCIS from making its claims, RCIS has never been entitled to any reimbursement or debt and its listing of First Foliage on the ITS was in error pursuant to section 7(B)(1)(b)(1) of the FCIC's Ineligible Tracking System Handbook for the 2008 and Succeeding Crop Years, which states:

A[fter] a person is certified to RMA as ineligible and listed as ineligible

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

21

by RMA: (1) If the person believes he or she has been listed [in error], the person may submit an appeal to NAD . . . (b) The person must have been listed incorrectly because: (1) of an error.

U.S. INELIGIBLE TRACKING SYSTEM HANDBOOK FOR THE 2008 AND SUCCEEDING CROP YEARS, FCIC 24050, §§ 4 & 5 (2008).

84.    Because First Foliage never owed a debt to RCIS for the lack of SBI information being included on its insurance application, and consequently, RCIS listed First Foliage on the ITS in error, First Foliage should never have been rendered ineligible for crop insurance.  The parties are in doubt as to their respective rights, and First Foliage requests that this Court take jurisdiction over the parties and declare that:

A)    RCIS's claim is time barred by the terms of the MPCI Policies for the 2005 and 2006 crop years, which provide a limitations period of one year within which to dispute an insurer's initial claim determination;

B)    The insured may supplement its application for coverage at any time to include omitted SBI information and that such supplemented application is effective as of the date of the original application.

C)    Because of RCIS delay in asserting its claim arising from alleged insufficiency of the SBI information, First Foliage is time-barred from obtaining an FAD, and, accordingly, RCIS's claim must likewise be time-barred;

D)    Because the claim is time-barred, RCIS could not assert it and there could be no violation by First Foliage of the insurance policy pertaining to SBI information;

E)    There was no violation by First Foliage of the insurance policy pertaining to SBI information that forms the basis of RCIS' claim that a debt is owed by First Foliage because to the extent that First Foliage's insurance policy for the crop year 2005 was issued on the basis of incomplete SBI information, this was a direct result of the actions and omissions of RCIS;

F)    Because there was no violation by First Foliage of the insurance policy pertaining to SBI information which forms the basis of RCIS' claim that a

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

22

debt is owed by First Foliage, a debt was never owed by First Foliage;

G)      Because a debt was never owed by First Foliage, the placement of First Foliage on the ITS by RCIS was in error;

H)      Because the placement of First Foliage on the ITS by RCIS was in error, First Foliage was never rendered ineligible for crop insurance;

I)      Because First Foliage was placed on the ITS by RCIS in error:

      1)  RMA is obligated to make a determination that First Foliage was placed on the ITS by RCIS in error;

      2)  FCIC is obligated to make a determination that First Foliage was placed on the ITS by RCIS in error;

J)   First Foliage is not liable to either RCIS or Firemen's Fund for the repayment of any indemnity.

85.    First Foliage has a clear and bona fide need for this Court to make the above declarations concerning the parties' respective rights.

**WHEREFORE,** Plaintiff/Debtor First Foliage respectfully requests this Court take jurisdiction over the parties and enter a declaratory judgment as detailed above, together with such further relief the Court deems just, proper and necessary to effectuate any declaration consistent with 28 U.S.C. §§ 2201 and 2202.

<u>**COUNT II**</u>
<u>**OBJECTION TO CLAIM**</u>
**(Objection to Claim)**

88.    First Foliage expressly incorporates herein by reference the allegations set forth in paragraphs 1 through 87 of this Complaint.

89.    RCIS asserts a claim in excess of $2.8 million against First Foliage, as a result of First Foliage's alleged failure to list two individuals with Substantial Business Interests.

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

23

90.     Any alleged failure to list such individuals was caused by RCIS and its agent, Insurance for Agriculture, such that RCIS should be barred and estopped from asserting any claim to recover such amounts.

91.     Further, RCIS's failure to timely assert its claim eliminates First Foliage's right to obtain FADs, which are indispensible to its defense to RCIS's claim, and, thus, RCIS should be barred and estopped from asserting such a claim.

92.     First Foliage objects to RCIS's claim and demands that any such claim be disallowed in its entirety.

**WHEREFORE,** Plaintiff/Debtor First Foliage respectfully requests this Court enter judgment in favor of First Foliage on its claims, with an award of attorney's fees, interest and suit costs to the Defendants.

## <u>COUNT III</u><br><u>NEGLIGENCE</u>
**(as to Defendant RCIS, Insurance for Agriculture, and Fireman's Fund)**

93.     First Foliage expressly incorporates herein by reference the allegations set forth in paragraphs 1 through 92 of this Complaint.

94.     First Foliage further alleges that RCIS and Insurance for Agriculture, their agents and/or employees, owed First Foliage a duty of due care as First Foliage's crop insurance agent(s).

95.     That RCIS and Insurance for Agriculture, their agents and/or employees breached their duty of due care owed to First Foliage in one or more of the following particulars:

- Failing to require First Foliage to initial a SBI Certification Statement for CY 2005;

INFANTE, ZUMPANO HUDSON & MILOCH, LLC<br>500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146<br>Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

- Failing to verify that the Substantial Business Interest (SBI) information listed on the application for the insurance or acreage report for CY 2005 was accurate;

- Failing to properly advise First Foliage regarding the issue of First Foliage's SBI information and failing to otherwise engage in any type of inquiry or conversation with First Foliage to elicit SBI information for inclusion in an insurance application or policy.

96.    That as a direct and proximate result of RCIS and Insurance for Agriculture', their agents' and/or employees' breach of their duty of due care, First Foliage has sustained damages.

97.    First Foliage is further entitled to its reasonable costs, attorneys' fees and expenses incurred in connection with the bringing of this action in an amount to be established upon the trial of this action.

**WHEREFORE,** Plaintiff/Debtor First Foliage respectfully requests this Court enter judgment in favor of First Foliage on its claims, with an award of attorney's fees, interest and suit costs to the Defendants.

### <u>COUNT IV</u><br><u>BREACH OF FIDUCIARY DUTY</u><br>(as to Defendant RCIS, Insurance for Agriculture, and Fireman's Fund)

98.    First Foliage expressly incorporates herein by reference the allegations set forth in paragraphs 1 through 97 of this Complaint.

99.    First Foliage further alleges that RCIS and Insurance for Agriculture, their agents and/or employees, owed First Foliage a fiduciary duty a duty of due care.

100.    That RCIS and Insurance for Agriculture, their agents and/or employees breached

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

25

their fiduciary duty owed to First Foliage in one or more of the following particulars:

- Failing to require First Foliage to initial a SBI Certification Statement for CY 2005;

- Failing to verify that the Substantial Business Interest (SBI) information listed on the application for the insurance or acreage report for CY 2005 was accurate;

- Failing to properly advise First Foliage regarding the issue of First Foliage's SBI information and failing to otherwise engage in any type of inquiry or conversation with First Foliage to elicit SBI information for inclusion in an insurance application or policy.

101.    That as a direct and proximate result of RCIS' and Insurance for Agriculture's, their agents' and/or employees' breach of their fiduciary duties, First Foliage has sustained damages.

102.    First Foliage is further entitled to its reasonable costs, attorneys' fees and expenses incurred in connection with the bringing of this action in an amount to be established upon the trial of this action.

**WHEREFORE,** Plaintiff/Debtor First Foliage respectfully requests this Court enter judgment in favor of First Foliage on its claims, with an award of attorney's fees, interest and suit costs to the Defendants.

## COUNT V
## EQUITABLE ESTOPPEL
### (as to Defendant RCIS)

103.    First Foliage expressly incorporates herein by reference the allegations set forth in

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

26

paragraphs 1 through 102 of this Complaint.

104.    First Foliage further alleges that RCIS, its agents and/or employees, has operated with unclean hands throughout this entire process, and its acts and omissions are ultimately responsible for the omission of the SBI information on First Foliage's insurance application and/or policy.

105.    That the doctrines of unclean hands and equitable estoppel preclude any recovery by RCIS, its agents and/or employees, of the debt claimed to be due by First Foliage in the amount of $2,849,973.00.

106.    Moreover, in December 2009, First Foliage amended its insurance application to list the two shareholders omitted from its 2005 application and corrected the deficiencies RCIS alleged were present in the 2005 application.

107.    Because First Foliage amended its insurance application in 2009 to correct the deficiencies RCIS alleged were present in the 2005 application, RCIS was not prejudiced in any way and should be estopped from recovering any monies from First Foliage.

108.    Furthermore, in RCIS's Claim Review Report dated September 21, 2005, Darla Barrett, who authored the report, stated as follows: "Policy and procedures as specified in the Nursery Crop Provisions and Nursery [Loss Adjustment Standards Handbook] LASH were followed".

109.    Accordingly, RCIS's own finding that First Foliage followed the Nursery Crop Provisions and Nursery Loss Adjustment Standards Handbook should preclude RCIS from asserting that First Foliage was responsible for any failure to comply with the Nursery Crop Provisions.

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
500 S. Dixie Highway, Suite 302 / Coral Gables, Florida 33146
Telephone: (305) 503-2990 / Facsimile: (305) 774-5908

27

**WHEREFORE,** Plaintiff/Debtor First Foliage respectfully requests this Court enter judgment in favor of First Foliage on its claims, with an award of attorney's fees, interest and suit costs to the Defendants.

Dated: September 13, 2010          Respectfully submitted,

INFANTE, ZUMPANO HUDSON & MILOCH, LLC
*Counsel for Plaintiff First Foliage, L.C.*
500 S. Dixie Highway, Suite 302
Coral Gables, FL 33146
Telephone: (305) 503-2990
Facsimile: (305) 774-5908
Email:  Luis.Salazar@izhmlaw.com
Email: Linda.Jackson@izhmlaw.com

By: /s/ Luis Salazar
    LUIS SALAZAR
    Florida Bar No. 147788
    LINDA JACKSON
    Florida Bar No. 843164